IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION | ) ) ) | Case No. 1:14-cv-01155 |
| | ) | Judge Solomon Oliver |
| Plaintiff, | ) | |
| v. | ) | Magistrate Judge Kenneth McHargh |
| | ) | |
| THOMAS ABDALLAH, et al., | ) ) | **(1) MEMORANDUM IN OPPOSITION TO PLAINTIFF SEC'S MOTION FOR** |
| Defendants | ) | **ORDER TO SHOW CAUSE AGAINST** |
| | ) | **DEFENDANT CICOLANI AND RELIEF** |
| | ) | **DEFENDANT HOOD FOR THEIR** |
| | ) | **VIOLATIONS OF THE COURT'S** |
| | ) | **ASSET FREEZE ORDERS, AND** |
| | ) | **(2) RENEWED MOTION FOR STAY** |
| | ) | **OF CIVIL PROCEEDINGS** |

## I.      INTRODUCTION

Plaintiff United States Securities and Exchange Commission's ("SEC") voluminous Motion for Order to Show Cause Against Defendant Jerry Cicolani, Jr. and Relief Defendant Kelly Hood for Their Violations of the Court's Asset Freeze Orders (hereinafter "SEC's Motion") is incorrect, disingenuous and, frankly, over the top.  It criticizes Mr. Cicolani and Ms. Hood for pre-paid rent that they voluntarily withdrew pursuant to agreement with SEC counsel, and for using a non-refundable jet card paid for in 2013 to reserve two flights, one of them to appear in this Court in response to an SEC subpoena.

Defendants did not intentionally violate the Court's asset freeze orders.  They are not in contempt of this Court.  Mr. Cicolani and Ms. Hood respectfully request that this Court deny the SEC's Motion.  Further, Mr. Cicolani and Ms. Hood renew their Motion for a stay of the civil proceedings pending the outcome of the criminal matter.

## II.    FACTS

The SEC first served investigative, civil subpoenas requesting documents of Mr. Cicolani and Ms. Hood on March 19 and March 20 respectively.  The SEC did not file suit, or request an asset freeze or relief of any kind, as to any of the parties to this case, until more than two months later on May 29, 2014.  The Court entered a written asset freeze in this case on May 30, 2014, with permission to use some funds to pay living expenses.  Temporary Restraining Order 6, ECF No. 9, May 30, 2014 (hereinafter "Asset Freeze Order").  The Court gave verbal instruction to counsel of the same on the afternoon of May 29 via a telephonic hearing.

The Asset Freeze Order allowed Mr. Cicolani to use $2,000 and Ms. Hood to use $3,500 for reasonable and ordinary expenses between May 30, 2014 and June 5, 2014.  *Id.*  The Court later expanded that allowance to $5,000 combined for Mr. Cicolani and Ms. Hood from June 5 to June 19.  Order 2, ECF No. 16, June 9, 2014.  On June 12, 2014, the Court allowed Mr. Cicolani and Ms. Hood to spend an additional $3,000 jointly through June 26.  Temporary Restraining Order 2, ECF No. 23, June 12, 2014.

As Mr. Cicolani and Ms. Hood paid bills from their bank accounts as permitted on and after May 29, and as automatic payments were deducted from their accounts, they discovered that the SEC had frozen those accounts in their entirety.  As a result, pre- and post-freeze payments bounced and either had to be re-submitted or re-withdrawn post-freeze.  SEC knew that it was their own service of the Asset Freeze Order upon banks that had caused the approved payments to bounce and require re-submission, because counsel discussed it.  They even offered to help by contacting the banks, although that assistance was not timely or particularly effective.  They also have known, since June, that they had Mr. Cicolani's and Ms. Hood's agreement to the return of their pre-payment of $180,000 in rent.  Why the SEC is raising these issues in an

aggressively litigious fashion, two months after they were amicably resolved, is curious.  As to the remaining expenditures outlined in the SEC's Motion, as set forth below, Mr. Cicolani and Ms. Hood did their best to stay within the Court's temporary carve-outs, and to abide by its orders at all times.

## III.    ARGUMENT

A party moving for civil contempt must prove by clear and convincing evidence that the defendant has "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."  *Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003).  "Clear and convincing evidence is a not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence."  *Id.*  Here, the SEC must make a *prima facie* showing that the Defendants failed to comply with the Court's asset freeze orders.  If the SEC makes this showing, the burden shifts to the Defendants to show "categorically and in detail" why they are presently unable to comply with the order.  *Id.*  The Court must also consider "whether the defendant[s] 'took all reasonable steps within [their] power to comply with the court's order.'"  *Id.*

The SEC does not meet the requirements for a *prima facie* case.  Even if it did, Mr. Cicolani and Ms. Hood took all reasonable steps within their power to comply with the Court's asset freeze orders, and the Court should not hold them in contempt.  Instead, the Court should stay the civil case pending the outcome of the criminal matter.

**A.    The Defendants and the SEC Resolved the Prepaid Rent Check Issue Long Ago, and the Landlord Returned the Funds, which Remain Frozen.**

The SEC claims that the Defendants violated the asset freeze in connection with pre-payment of $180,000 in rent.  The parties reached agreement on this issue in June.  The SEC

directly contacted the couple's landlord, who was sufficiently intimidated that he returned the payment and evicted Mr. Cicolani and Ms. Hood.  Mr. Cicolani and Ms. Hood had to beg for permission to stay in their rented home through July, despite having pre-paid that rent last January, before even a hint of an SEC investigation could have reached them.

The Court issued its verbal asset freeze order on the afternoon of Friday, May 29th, and entered the Asset Freeze Order on the docket on Saturday, May 30th.  Mr. Cicolani and Ms. Hood did not intend to violate either order.  They agreed to have the landlord return the payment, and agreed that it was subject to the asset freeze.  The SEC has the $180,000.  Counsel resolved this issue via telephone, and through the Unopposed Motion for Limited Asset Freeze Relief. ECF # 40, June 23, 2014.  The Court should not hold Mr. Cicolani and Ms. Hood in contempt on this issue.

**B.**     **Mr. Cicolani Purchased the Nonrefundable Flights on the Chartered Aircraft in 2013, Long Before Any Hint of an SEC Investigation, and that Account is Now Frozen as Well.**

The SEC claims that Mr. Cicolani and Ms. Hood violated the freeze by reserving two flights on an aircraft chartered through the Sentient Jet Card Program.  These arguments are incendiary and misleading.

Mr. Cicolani and Ms. Hood did not "flee" anywhere (SEC's Motion at 7).  Ms. Hood is raising a child in Florida, and the couple live there.  They also have family in Ohio, and are trying to sell a house here, a property that also is subject to the asset freeze.

Mr. Cicolani purchased a Sentient Jet Card nearly a year ago, on October 3, 2013. Exhibit 10 to SEC's Motion at 3; Exhibit 11 to SEC's Motion at 2.  As the SEC acknowledges, the Jet Card is non-refundable.  Mr. Cicolani could not claim it as an asset if he wanted to; the Sentient Jet agreement states that once purchased, the hours on the card are not refundable "for any reason," Exhibit 10 to SEC's Motion at 7, and the cardholder may not resell or assign the

services "without the express written consent of a Senior Officer of Sentient," *id.* at 15. Use of the Jet Card is akin to the use of a car purchased in 2013. Its use is not a violation of the asset freeze orders.

The SEC knows that one of the two flight reservations that offend it so was for the purpose of Ms. Hood's appearance at the Court's June 5th hearing, if necessary, in response to the SEC's own subpoena. In the days leading up to that hearing, counsel discussed whether it would be necessary for Mr. Cicolani and Ms. Hood to attend. When they could not reach agreement, a motion to excuse the Defendants' appearance was filed, and was pending on June 5th. Mr. Cicolani did the responsible, compliant thing by using transportation that did not require a new expenditure to make sure Ms. Hood could be in court if required on June 5th. The second flight challenged by SEC is irrelevant, as it too was purchased with funds expended in October 2013. Mr. Cicolani and Ms. Hood are not under any travel restrictions. They have family in Florida and Ohio. They clearly have reason to meet with their counsel in Ohio. They have not expended any frozen funds for that travel. The SEC's decision to submit to this Court a marketing brochure for the type of plane used for the flight (SEC's Motion Ex. 15) is, frankly, beyond the pale.

The SEC has not met its burden of presenting clear and convincing evidence that the Defendants violated the asset freeze orders by utilizing nonrefundable chartered aircraft miles purchased in 2013. Even if the SEC did meet its burden, however, the Defendants took all reasonable steps to comply with the orders. Instead of accumulating expenses to travel to and from Ohio from Florida, which would count against the amounts allowed in the Court's carve outs, the Defendants used a mode of transportation that cost them nothing during the period of the freeze. Further, the SEC has now contacted Sentient Jet and frozen Mr. Cicolani's Jet Card

account, so the Defendants will no longer be able to use these credits to travel to and from Ohio. Therefore, the Court should not hold Mr. Cicolani and Ms. Hood in contempt.

    **C.**    <u>**The SEC Miscalculates Ms. Hood's Post-Freeze Spending by Including Items She Tried to or Did Pay for Pre-Freeze.**</u>

In Exhibit 18 to its Motion, the SEC calculates what it perceives to be Ms. Hood's "overspending."  It includes several items that either pre-date the freeze or that Ms. Hood initiated before the freeze was in place, but which posted to the account just post-freeze, and which the banks rejected.

    **1.**    **The SEC ignores that many expenses post-freeze were for bills for which payment was initiated pre-freeze, but which the banks rejected.**

Many of the charges the SEC includes in Exhibit 18 to its Motion are bills for which payment was initiated before the asset freeze was in place, but, for some reason, the bank rejected, e.g., Humana Insurance, $1,032.92, post date June 2, 2014, and to State Farm Insurance, $2,813.00, post date June 2, 2014,  Exhibit 19 to SEC's Motion at 2.  Because the payments did not post before the freeze, and despite the carve outs, the bank did not allow them to go through.  Finally, Ms. Hood attempted to make the payments from her First National Bank account, and the payments went through:

| Account | Date | Transaction | Amount | Source |
|---|---|---|---|---|
| Hood FNB of Gulf Coast #1817 | 6/5/2014 | HUMANA INSURANCE  PPD | $ 1,032.92 | Ex. 8 |
| Hood FNB of Gulf Coast #1817 | 6/13/2014 | 800-956-6310 IL         Card# 3841 DBT CRD 1954 06/12/14<br>STATE FARM INSURANCE | $ 1,854.00 | Ex. 8 |

SEC's Exhibit 18 at 2, 4.  This was caused by the SEC's immediate service of the Asset Freeze Order on the banks.  It is exactly the problem that the Court was reasonably trying to (Court:  "I am trying to make room here so that people are not caught with their bills bouncing, that kind of thing.")  (May 29 Transcript Excerpt, quoted at SEC's Motion at 3).

avoid .  Had the payments gone through when Ms. Hood first attempted to make them, they would not be included in the SEC's calculation of the Defendants' "overspending."   Frankly, neither party expected the banks to freeze the Defendants' accounts in their entirety.  When the mortgage payment bounced, for example, SEC counsel offered to speak to the bank about it on Defendants' behalf, but it took at least a week for that to happen.  This is all unfortunate, but it was all out in the open, and not evidence of contempt.

Removing those payments from the SEC's calculation, the SEC overstated the amount Kelly "overspent" from May 30 to June 5 by $1,032.92 and from June 13 to June 17 by $1,854.00.

**2.      The SEC overstated Ms. Hood's "overspending" from May 30 to June 5, 2014.**

The SEC ignores the fact that the posted date of transactions on account statements does not evidence when transactions occurred.  For example, four of the transactions on p. 2 of Exhibit 18 to the SEC's Motion, while posted on or after May 30, occurred before May 30.

| Account | Date | Transaction | Amount | Source |
|---|---|---|---|---|
| Hood Fifth Third #8986 | 5/30/2014 | DEBIT CARD PURCHASE AT OAKES FARMS, NAPLES, FL ON 052814 FROM CARD#: XXXXXXXXXXXX6098 | $    9.98 | Ex. 19 |
| Hood Fifth Third #8986 | 5/30/2014 | DEBIT CARD PURCHASE AT SILVERSPOT CINEMA, 239-592-0300, FL ON 052914 FROM CARD#: | $  32.00 | Ex. 19 |
| Hood Fifth Third #8986 | 5/30/2014 | DEBIT CARD PURCHASE AT PUB AT NAPLES, NAPLES, FL ON 052914 FROM CARD#: XXXXXXXXXXXX6098 | $  58.40 | Ex. 19 |
| Hood Fifth Third #8986 | 6/5/2014 | DEBIT CARD PURCHASE AT NORDSTROM #0775, NAPLES, FL ON 052714 FROM CARD#: | $  536.36 | Ex. 19 |

SEC's Exhibit 18 at 2.  The first three transactions on p. 2 of Exhibit 18 (pictured above) posted on the account on May 30, but occurred prior to May 30.  The second to last transaction above posted to the account on June 5, but occurred on May 27.

Three other transactions occurred pre-freeze.

| Account | Date | Transaction | Amount | Source |
|---|---|---|---|---|
| Hood Fifth Third #8986 | 5/30/2014 | ELECTRONIC IMAGE | $ 214.00 | Ex. 19 |
| Hood Fifth Third #8986 | 5/30/2014 | DEBIT CARD PURCHASE AT COMCAST OF NAPLES, 800-COMCAST, FL ON 053014 FROM CARD#: | $ 542.78 | Ex. 19 |
| Hood Fifth Third #8986 | 5/30/2014 | BK OF AM CRD ACH PAYBYPHONE 1825727 053014 | $ 681.96 | Ex. 19 |

SEC's Exhibit 18 at 2.

Each of the transactions above was initiated prior to the afternoon of May 29th, but posted to Ms. Hood's Fifth Third account after the freeze.  Removing these payments from the SEC's calculation, the SEC overstated the amount Kelly "overspent" from May 30 to June 5 by $2,075.48.

### 3. Removing these overstatements from the SEC's Exhibit 18, Ms. Hood did not overspend the permitted carve outs.

After adjusting the SEC's Exhibit 18 to remove the overstatements, Ms. Hood did not overspend the permitted carve outs.  For the period from May 30 to June 5, removing the $1,032.92 Humana payment and the $2,075.48 in transactions that occurred pre-freeze, Ms. Hood spent $4,392.03.  Exhibit 18 to SEC's Motion.  During this same period, Mr. Cicolani spent $79.00.  Combined, the two spent $4,471.03, or $1,028.97 less than the Court allowed. While the SEC points out that the Court only permitted Ms. Hood to spend $3,500.00 from May 30 to June 5, it also admits that many of the expenses Ms. Hood was paying were joint family expenses.  SEC's Motion at 12 ("these expenditures benefitted both of them").  The Defendants did not spend more than the total amount the Court permitted from May 30 and June 5, 2014, and the Court should not hold Mr. Cicolani and Ms. Hood in contempt.

For the period dated June 13 to June 17, removing the $1,854.00 overstatement, Ms. Hood spent $6,750.76.  Exhibit 18 to SEC's Motion.  While this is over the $5,000 carve out permitted by the Court from June 12 to June 26 by $1,750.76, Defendants had $1,028.97

remaining for expenses incurred from May 30 to June 5.  They did not intend to go over the limits, and if they did, the amount in question, roughly $700, is far from an indication that they did so with contempt for the Court's orders.  In fact, given the bounced payments and week-by-week allowances, it indicated that they tried to keep their family's financial obligations within the Court's limits.

**D.**     **The Court Should Stay the Contempt Proceedings Pending the Outcome of the Criminal Matter.**

Defendants should not be expected to litigate these issues with a federal agency, while at the same time that agency is using the information it develops to feed an active criminal investigation.  The SEC's Motion demonstrates that it is gathering audio and video surveillance and other evidence in coordination with a criminal investigation.  The U.S. Attorney has expressly stated that it is using that very evidence to prepare an indictment.  For those reasons, for the reasons stated in Mr. Cicolani and Ms. Hood's Opposition to the SEC's Motion to Show Cause regarding the Court's June 20 Order, ECF No. 82, Aug. 20, 2014, and as initially requested on the date this case was filed, May 29, 2014 (ECF No. 5), Mr. Cicolani and Ms. Hood respectfully renew their Motion for a Stay pending the outcome of the criminal matter.

## IV.     CONCLUSION

Mr. Cicolani and Ms. Hood complied with the Court's asset freeze orders with regard to the prepayment of rent, the chartered aircraft, and the post-freeze spending allowances from May 30 to June 5.  They have taken all reasonable steps to attempt to comply with the Court's June 13 to June 17 carve out.  Therefore, the Court should deny the SEC's Motion and stay this matter pending the outcome of the criminal case.

Respectfully submitted,


*/s/ Virginia A. Davidson*
Robert Rapp (0010961)
Virginia A. Davidson (0025773)
Scott C. Matasar (0072151)
Sarah M. Antonucci (0089132)
CALFEE HALTER & GRISWOLD LLP
1405 East Sixth Street
Cleveland,  Ohio  44114
(216) 622-8200 Telephone
(216) 241-0816 Facsimile
rrapp@calfee.com
vdavidson@calfee.com
smatasar@calfee.com
santonucci@calfee.com
*Counsel for Defendants*
*Jerry A. Cicolani, Jr., Kelly C. Hood,*
*and Turnbury Consulting Group, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum in Opposition to Plaintiff U.S. Securities and Exchange Commission's Motion for Order to Show Cause Against Defendant Jerry Cicolani, Jr. and Relief Defendant Kelly Hood for Their Violation of the Court's Asset Freeze Orders has been has been filed electronically this 26th day of August, 2014, in accordance with the Court's Electronic Filing System.  Parties may access this filing through the Court's filing system.

*/s/ Virginia A. Davidson*
*Counsel for Defendants Jerry A. Cicolani, Jr., Kelly C. Hood, and Turnbury Consulting Group, LLC*