UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | Case No.: 1:14 CV 1155 |
| Plaintiff | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| THOMAS ABDALLAH, *et al.*, | ) ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case is the United States of America's Motion to Intervene as a Party and to Stay Proceedings. (Mot. to Intervene and Stay, ECF No. 190.) Specifically, the United States of America, by and through the United States Attorney's Office for the Northern District of Ohio ("United States"), seeks to intervene in order to stay discovery and other proceedings with respect to Defendants Thomas Abdallah, Mark George, and Jeffrey Gainer (collectively, the "Criminal Defendants"), who also face criminal charges related to the same underlying conduct. *See United States v. Thomas Abdallah*, *et al.*, Case No. 1:15 CR 231. While the parties in the instant matter have not opposed the Motion, the U.S. Securities and Exchange Commission ("Plaintiff" or "SEC") has requested any stay be limited to allow the Receiver appointed in this matter to continue securing and preserving the assets of the Defendants. (Mot. to Intervene & Stay 9-10, ECF No.

190.) For the following reasons, the United States's Motion is granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

Defendants Kenneth A. Grant ("Grant") and Thomas Abdallah ("Abdallah") are co-owners of Defendant KGTA Petroleum, Ltd. ("KGTA"), which is an Ohio limited liability company formed in 2008 as Susannah, LLC and renamed to KGTA on March 22, 2012. (Compl. ¶¶ 23-25, ECF No. 1.) Grant and Abdallah allegedly marketed to investors that KGTA bought crude oil and refined fuel products at discounted prices, then resold these products to third-party purchasers at a premium, producing a substantial profit for investors. (*Id.* ¶ 1.) As a result, KGTA purportedly offered astronomical returns to investors – between 2-4% per month (or 24-48% annualized) – with no market risk. (*Id.* ¶ 2.)

To further encourage investment in KGTA, Grant and Adhallah assured prospective investors that their principal and returns would flow through an escrow account monitored by Defendant Mark M. George ("George"). (*Id.* ¶ 3.) Grant, Abdallah and George promised to hold investor funds in George's Interest on Lawyers Trust Account ("IOLTA") and release them only to pay invoices for the purchase of fuel. (*Id.* ¶ 4.) Based on these promises, KGTA allegedly raised at least $20.73 million from selling promissory notes to investors between October 8, 2012, and February 2014. (*Id.* ¶ 5.)

However, Grant and Abdallah allegedly defrauded investors by operating KGTA as a Ponzi scheme. KGTA did not generate revenue by buying and reselling oil products and investor funds were not held in escrow pending legitimate purchase orders. Instead, George released investor funds straight to KGTA. Some of the funds were used to pay Grant and

Abdallah's personal expenses, while others were used to pay "fake returns" to investors. (*Id.* ¶ 6.)

Grant, Abdallah, and KGTA also allegedly violated the registration provisions of federal securities law. They offered and sold most of KGTA's promissory notes through Defendants Jeffrey L. Gainer ("J. Gainer") and Jerry A. Cicolani ("Cicolani'), who are registered representatives with a Cleveland, Ohio-based broker-dealer. (*Id.* ¶ 9.) At the behest of Abdallah and Grant, J. Gainer and Cicolani allegedly sold the KGTA promissory notes to investors without a registration statement on file or in effect. (*Id.* ¶ 11.) They also hid these transactions from their broker-dealer firm and kept the proceeds for themselves, a practice known as "selling away." (*Id.* ¶ 12.) J. Gainer and Cicolani were allegedly paid approximately $2 million and $4 million, respectively, in fees by selling KGTA promissory notes, a fact which they hid from investors. (*Id.* ¶ 13.) These fees were then "funneled" through entities owned by Nancy Gainer ("N. Gainer"), J. Gainer's wife, and Kelly C. Hood ("Hood"), Cicolani's girlfriend. (*Id.* ¶ 15.)

As a result of this alleged activity, the SEC commenced this civil suit ("Enforcement Action"), on May 29, 2014, alleging various violations of the Securities and Exchange Act against Defendants Abdallah, Grant, KGTA, George, J. Gainer, and Ciciolani (collectively, the "Civil Defendants") and requesting relief from Relief Defendants N. Gainer, Hood, NATG, LLC and Turnbury Consulting Group, LLC (collectively, "Relief Defendants"). (*Id.* ¶¶ 23-32.) On December 3, 2014, as part of the Enforcement Action, this court froze Defendants' assets and appointed the Receiver to conserve the existing estate pending resolution of the case. (ECF No. 119, at 3-5.)

On July 7, 2015, the United States filed the instant Motion to Intervene as a Party and to Stay Proceedings. (Mot. to Intervene and Stay, ECF No. 190) The United States argues that, since a criminal Indictment involving the same underlying conduct has been filed, it should be allowed to intervene and stay the Enforcement Action pending the completion of the criminal case. Such action would prevent prejudice to the parties in the parallel litigation, resulting primarily from the wide-ranging discovery available in civil litigation. (*Id.* at 2, 4.)

## II.  LAW AND ANALYSIS

### a. Intervention

The court must first consider whether the United States may intervene in the instant civil case. The United States argues that both intervention of right and permissive intervention, subsections (a) or (b) of Rule 24 of the Federal Rules of Civil Procedure, respectively, are appropriate in this case. (Mot. to Intervene and Stay 3, ECF No. 190.) Because this court finds permissive intervention proper, it need not address whether the United States may intervene as of right pursuant to Rule 24(a)(2). Permissive intervention is governed by Rule 24(b), which provides, in relevant part: "On timely motion, the court may permit anyone to intervene who: . . . (B)  has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B) (2015). Stated differently, "a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 374 (6th Cir. 2014) (quoting *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005)). Once these two requirements have been met, the district court must "balance undue delay and prejudice to the

original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id.*

In the present case, the United States has satisfied all the requirements for permissive intervention. First, the United States's Motion to Intervene and Stay was timely. (Mot. to Intervene and Stay, ECF No. 190.) While Rule 24(b) provides no precise standard, the Sixth Circuit reviews five factors to determine timeliness:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Yates v. Ortho-McNeil Pharm. Inc.*, 76 F. Supp. 3d 680, 689-90 (N.D. Ohio 2015) (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

Here, the Motion to Intervene was filed while the SEC Enforcement Action was in its initial stages. Very little discovery had occurred and the time for amending the pleadings had not yet passed. (Case Management Conference Order, ECF No. 185.) There is also no indication that the United States should have, or could have, filed its Motion earlier, given the purpose for which intervention is sought. *See Stupak–Thrall v. Glickman*, 226 F.3d 467, 479 n.15 (6th Cir. 2000) ("The 'purposes of intervention' prong of the timeliness element normally examines *only* whether the lack of an earlier motion to intervene should be excused, given the

-5-

proposed intervenor's purpose – for example, when the proposed intervenor seeks to intervene late in the litigation to ensure an appeal."). The Motion was filed only thirteen days after the Indictment in the criminal case. (Mot. to Intervene & Stay, ECF No. 190 in Case No. 1:14 CV 1155; Indictment, ECF No. 1 in Case No. 1:15 CR 231.) As such, it is also clear that there has been no apparent delay.

Additionally, there is no evidence that the timing of the Motion had any prejudicial effect on the current parties. *See Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 592 (6th Cir.1982) ("The prejudice inquiry is narrow: only that prejudice attributable to a movant's failure to act promptly may be considered. The broader factor of prejudice that may flow from the intervention itself does not weigh in the balance."). Finally, the court is unaware of any unusual circumstances militating either against or in favor of intervention. Accordingly, the court concludes that the Motion was timely filed, and neither the SEC nor the Criminal Defendants argue to the contrary.

Next, the court finds that there are common questions of law and fact with respect to this action and the pending criminal case. *See, e.g.*, *SEC v. HealthSouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003) (finding common questions of law and fact between an SEC civil enforcement matter and a related criminal proceeding); *SEC v. Mersky*, Civ–a–93–5200, 1994 WL 22305, at *2 (E.D. Pa. Jan. 25, 1994) (same). Both the criminal prosecution and the Enforcement Action relate to, *inter alia,* Defendants' alleged violations of various provisions of the securities laws. (Compl. ¶¶ 1-17, ECF No. 1 in Case No. 1:14 CV 1155; Indictment ¶¶ 1-13, ECF No. 1 in Case No. 1:15 CR 231.)

Finally, the court also concludes that no undue prejudice will result from permitting the United States to intervene in this action. While discovery and trial preparation will halt if the United States is allowed to intervene and stay the case, such action may, in fact, result in greater convenience to all the parties. It would likely reduce the burden upon the Criminal Defendants, who would otherwise be required to defend two actions on the same claims. Moreover, none of the parties filed a motion in opposition to the United States' Motion to Intervene. Thus, the court finds that the original parties' rights will not be unduly prejudiced by allowing the United States to intervene. Under these circumstances, the United States's intervention is permissible. *See generally SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1068 (C.D. Cal. 2008) (collecting cases and explaining that "numerous courts have allowed the United States government to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until resolution of a related criminal case.").

### b. Stay Proceedings

The United States also moves to stay discovery in the instant case to prevent interference with the parallel criminal proceedings. While not compelled to do so, a court may exercise "its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem[ ] to require such action, sometimes at the request of the prosecution, sometimes at the request of the defense.' " *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). The burden is on the party seeking the stay to show "pressing need for delay" and "that neither the other party nor the public will suffer harm from entry of the order." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627-28 (6th Cir. 2014) (quoting *Ohio*

*Envtl. Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)). The stay must only be entered for a certain period of time and must not "place [the] case in limbo for years." *Ohio Envtl. Council*, 565 F.2d at 396.

While there is no precise test in this Circuit for determining when a stay is appropriate, district courts commonly consider factors such as:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (quoting *Chao v. Fleming*, 498 F.Supp.2d 1034, 1037 (W.D. Mich. 2007)).

Upon consideration of the relevant factors, the court finds the majority weigh in favor of granting a stay in this matter. As described above, the subject matter of the criminal and civil cases are virtually identical. (*See supra* Section II.a.) The cases will also likely involve many of the same issues, witnesses, and evidence. Moreover, the criminal case is already under way and all but one of the individual defendants have been indicted. (Indictment, ECF No. 1 in Case No. 1:15 CR 231.) As the Sixth Circuit has observed, "[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct . . . ." *E.M.A. Nationwide, Inc.*, 767 F.3d at 628 (quoting *Trs. of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

Next, the court concludes that granting a stay serves both the SEC's and the public's interests. Because the SEC enforces securities laws on behalf of the public, its interests and that of the public are intertwined in a civil enforcement action. *See Krull v. SEC,* 248 F.3d 907, 915 (9th Cir. 2001) (noting that one of the key purposes of the Securities and Exchange Act is to protect the "public interest by insuring the stability of the markets and integrity of representation by its participants."). And, the SEC does not object to a stay of the Enforcement Action. (Order, ECF No. 206.) Moreover, the public interest in effective criminal prosecution generally outweighs any existing civil interests. *See Newman v. United States*, No. 3:90-CV-7646, 1992 WL 115191, at *1 (N.D. Ohio Jan. 10, 1992) (quoting *In re Ivan F. Boesky Sec. Litigation,* 128 F.R.D. 47, 49 (S.D.N.Y.1989)).

As to the fourth factor, the Criminal Defendants have not argued that they would be harmed if the United States's Motion is granted. Indeed, they may benefit from first defending against the criminal charges. Proceeding in this manner would eliminate the risk that their Fifth Amendment privilege against self-incrimination might be undermined, that criminal discovery might be expanded beyond the limits of Rule 16(b) of the Federal Rules of Criminal Procedure, and that either side might otherwise be prejudiced in advance of the criminal trial. *See SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) In fact, defendants in similar situations have sought to stay civil proceedings for these reasons. *See, e.g., Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080-81 (explaining that defendant moved to stay civil proceedings to avoid having to choose between testifying in civil case and giving up Fifth Amendment rights in criminal case).

Finally, a stay in the Enforcement Action will not unduly interfere with the court's management of its docket. Indeed, the resolution of the criminal proceedings may serve to expedite the civil proceedings, avoiding the needless expense of judicial time and resources. As another court opined when issuing a similar stay, "The conviction of a civil defendant as a result of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil case[ ] and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges." *In re Worldcom, Inc. Sec. Litig.*, No. 02-CIV-3288 (DLC), 2002 WL 31729501, at *2 (S.D.N.Y. Dec. 5, 2002) (internal citation omitted).

Given these considerations, and finding no opposition amongst the parties, the court finds a stay appropriate in this case. However, discovery will only be stayed for ninety (90) days from the date of this Order, after which the court will review the matter to determine whether the stay should be lifted.

Moreover, the SEC will be permitted to continue discovery to the full extent permitted under the Federal Rules of Civil Procedure with respect to: (1) identifying, locating, quantifying, and recovering all assets of the Civil Defendants and Relief Defendants, whether held by any of them or by others for the benefit of any of them; and (2) accounting for the receipt, expenditure, and/or transfer of all funds and other assets of the Civil Defendants and Relief Defendants, from June 1, 2010 through the present. The Receiver shall be permitted to continue to exercise the powers and duties detailed in the court's Order Granting Motion for Appointment of Receiver. (ECF No. 119.)

The court also understands from the submissions of the Parties that there will not be opposition to future motions for a limited lifting of the stay in order that the moving party may petition the court for attorneys' fees, other professional fees, or living expenses. The court further understands that this does not bind the non-moving parties to any particular position on the merits of any such petition.

## IV. CONCLUSION

For the foregoing reasons, the court hereby grants in part and denies in part the United States's Motion to Intervene as a Party and to Stay Proceedings. (Mot. to Intervene and Stay, ECF No. 190.)

IT IS SO ORDERED.

*/S/ SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

February 2, 2016